IN THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF MARYLAND

Northern Division

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| v. | ) | No. 1:23cr411-MJM |
| | ) | |
| ADENAGBE GIFT | ) | |
| OSEMWENKHAE. | ) | |

**OMNIBUS REPLY IN SUPPORT OF MOTIONS TO DISMISS THE INDICTMENT (ECF 148), TO SUPPRESS (ECF 149), FOR DISCLOSURE OF 404(b) EVIDENCE (ECF 150), AND FOR DISCLOSURE OF 801(d)(2) STATEMENTS (ECF 151)**

Adanegbe Osemwenkhae respectfully asks this Court to grant the motions he has filed in this case. For the reasons discussed below, the government has failed to refute Mr. Osemnkhae's position that the relief sought is necessary.

**I. THE COURT SHOULD ORDER THE GOVERNMENT TO FILE A BILL OF PARTICULARS.**

**A. The superseding indictment and additional discovery do not obviate the need for a bill of particulars in this case.**

The government was aware for weeks that defense pretrial motions were due on December 5, 2024. Yet, the government waited until exactly that day to file a superseding indictment, filing the superseding indictment less than two hours after defense counsel filed pretrial motions, including a motion detailing the defects in the indictment.

Still, for the reasons set forth below, the superseding indictment in this case does not obviate the need for a bill of particulars. While the superseding indictment represents a step in the right direction by at least identifying the specific transactions Mr. Osemwenkhae is alleged to

have participated in, it fails to provide the essential details of how he is alleged to have violated 18 U.S.C. § 1956(a)(1) in each instance. This is significant, because unlike conspiracy, which requires only an agreement, substantive money laundering transactions require proof of an actus reus by the defendant that establishes the defendant conduct or attempted to conduct a financial transaction, for the requisite purpose and with the requisite *mens rea*. *United States v. Kivanc*, 714 F.3d 782, 796 (4th Cir. 2013). As discussed below, the essential details that would allow Mr. Osemwenkhae to prepare a defense to these substantive counts are missing in the indictment. Moreover, and contrary to the government's arguments, essential details as to Mr. OSemwenkhae's alleged participation in the money laundering conspiracy are likewise absent.

Now, nearly a year after Mr. Osemwenkhae was charged and imprisoned, the government has provided more detailed discovery that is keyed to each alleged victim of the offense. And in its response, the government has set forth more specific information regarding the transactions at issue. Yet, given the number of devices seized containing a mass of relevant and irrelevant communications, with multiple terabytes of data, in combination with the vagueness with which the conspiracy is charged, there is a high risk that the government will "roam at large [and] shift its theory of criminality so as to take advantage of each passing vicissitude of the trial and appeal." *Russell v. United States*, 369 U.S. 749, 768 (1962). A bill of particulars is therefore required.

**B. The government has failed to refute that a bill of particulars is required in this case.**

   **1. A bill of particulars is necessary to provide essential details regarding the conspiracy count.**

First, the government takes the position that "there are very minimal pleading requirements for a money laundering conspiracy." ECF 166 at 40. In support of this proposition, the government claims that merely alleging the essential elements is sufficient. ECF

2

166 at 37, 40. But the elements are necessarily included in the charging statute, and yet the Fourth Circuit has held that parroting the statute may *not* be sufficient. *United States v. Brandon*, 298 F.3d 307, 310 (4th Cir. 2002) ("simply parroting the language of the statute in the indictment is insufficient."). The notion that money laundering conspiracy cases have a different and lower pleading standard has no support in the law. Like all federal cases, the pleading standards for a money laundering conspiracy are governed by Due Process and Fed. R. Crim. Proc. 7; they are not dependent upon the charging statute. The sufficiency of notice depends on the unique factors present in each case, including nature and complexity of the alleged offense. *See, e.g.*, *United States v. Wharton*, No. CRIM. ELH-13-0043, 2014 WL 1430387, at *12 (D. Md. Apr. 10, 2014), *aff'd,* 840 F.3d 163 (4th Cir. 2016) (granting bill of particulars based on the complexity of the charges). This case charges a conspiracy involving multiple alleged victims and many transactions involving a significant number of defendants; yet as to the conspiracy charge, the indictment is entirely silent on essential facts such as when Mr. Osemwenkhae entered into the unlawful agreement,and what his specific role is alleged to be. The government's argument that money laundering conspiracy is somehow exempted from the requirements of basic due process notice is meritness. The cases cited by the government do not refute Mr. Osemwenkhae's argument that he is entitled to notice of the basic facts pertaining to his specific alleged criminal conduct within the charged conspiracy.[1]

---

[1]    In *United States v. Bolden*, the defendants argued that the conspiracy charge of the indictment "(1) it failed to allege any overt acts; (2) it failed to identify the specified unlawful activity that produced the proceeds they conspired to launder; and (3) it failed to specify the offense defined in § 1956(a)(1) or § 1957 that the Boldens conspired to commit." 325 F.3d 471, 490–91 (4th Cir. 2003). However, the defendants did not argue, and the court did not address, whether a bill of particulars was necessary to supplement the minimally pleaded count, as Mr. Osemwenkhae does here. *United States v. Wicks* did not involve a money laundering conspiracy, but rather a charge of possessing forged securities. *United States v. Wicks*, 187 F.3d 426, 427 (4th Cir. 1999). *Wicks* likewise did not address whether a bill of particulars was necessary to provide the essential facts such that the defendant was able to investigate and prepare a defense. Finally United States v. Butler involved a drug conspiracy and the Fourth Circuit upheld the

3

Further, the government argues that no notice as to any actual acts of a defendant are necessary for a charge under section 1956(h), because an "overt act" is not an element of the charging statute. ECF 166 at 41. Here, the government substitutes the question of what is required to provide *adequate notice of the essential specifics of the charges*, with the wholly distinct question of the *essential elements* of the offense. Courts recognize this distinction, and have held that even where the minimal pleading standards are met, a bill of particulars is nevertheless necessary to provide information essential to preparing a defense. *See, e.g., United States v. Fletcher*, 74 F.3d 49, 53 (4th Cir. 1996) (noting that a bill of particulars is appropriate for the purpose of providing *missing or additional information* so that a defendant can effectively prepare for trial) (emphasis added); *United States v. Cuong Gia Le*, 310 F. Supp. 2d 763, 773—74 (E.D. Va. 2004) (stating that the Court may order a bill of particulars when an indictment "sets forth the offense elements and includes a brief statement of the facts and circumstances of the offense, but omits certain essential specifics of the offense"). If the government's "overt act" argument were true, courts would never require a bill of particulars in cases charging any conspiracy that requires no overt act. For example, while the fraud conspiracy statute, 18 U.S.C. § 1349 requires no overt act,[2] courts routinely order bills of particulars in such cases. *See, e.g.*, *United States v. Nekritin*, No. 10-CR-491 S-1 KAM, 2011 WL 1674799, at *8 (E.D.N.Y. May 3, 2011) (requiring the government to produce a bill of particulars specifying all false claims the defendants submitted as part of an alleged health care fraud conspiracy); *see also United States v. Duruisseau*, 796 F. App'x 827, 835 (5th Cir. 2019)

---

denial of a bill of particulars on the ground that the conspiracy count incorporated other counts where the facts were specifically pleaded. *United States v. Butler*, 885 F.2d 195, 199 (4th Cir. 1989). Here, however, we discuss why the substantive money laundering counts omit the essential facts that are necessary for Mr. Osemwenkhae to prepare a defense.

[2]    *United States v. Williams*, 820 F. Supp. 2d 663, 664 (D. Md. 2011) ("no pleading or proof of an overt act is required under 18 U.S.C. § 1349.")

(noting that a bill of particulars was granted in a case charging section 1349 bank fraud and wire fraud conspiracy). This is because a defendant needs sufficient evidence to prepare an individualized defense to a conspiracy charge, which may or may not apply to other co-defendants. *See, e.g.*, *United States v. Vastola*, 670 F. Supp. 1244, 1260 (D.N.J. 1987) (granting bill of particulars, in part, because conspiracy count "lacks sufficient particularization ... to allow [defendant] to do pretrial investigation in support of a defense"); *United States v. Orsini*, 406 F. Supp. 1264, 1265 (E.D.N.Y. 1976) (ordering bill of particulars to "set forth ... the exact date, time and location of" the overt act" to "enable the defendant to prepare an alibi defense.").

Next, the government argues that a bill of particulars is not required because "the indictment describes the money laundering conspiracy and how it worked in many respects." ECF 166 at 41-42. The government makes similar arguments elsewhere, pointing out that the indictment describes things like the underlying offense, the nature of the agreement, the identities of the co-conspirators, the names of the alleged "shell" entities used, and other aspects of the conspiracy broadly. *Id*. at 44-45. The government also argues that Mr. Osemwenkhae was placed on notice of his actions because the indictment stated what the "defendants" (as an undifferentiated group) were alleged to have done. Mr. Osemwenkhae is one of the defendants, the argument goes, so there is no notice problem to speak of. *Id*. at 45. The government's position ignores that every defendant has a due process right to present a *complete* defense. "[T]he Constitution guarantees criminal defendants a meaningful opportunity to present a complete defense." *Holmes v. South Carolina*, 547 U.S. 319, 319 (2006) (internal quotation omitted). A complete defense is necessarily an individualized defense, and may involve facts

and circumstances unique to each defendant. To present this kind of defense, a defendant is entitled to notice of what *he* is alleged to have done.

### 2. A bill of particulars is necessary with respect to the substantive money laundering counts.

The government stresses that the superseding indictment is specific because it alleges over 20 individual instances of laundering. *Id*. at 46. While the information in these charges certainly represents a step in the right direction, the government has nevertheless failed to specify what actions Mr. Osemwenkhae is alleged to have taken with respect to each substantive charged count. As noted above, substantive counts of laundering require substantive proof of the defendant's *actus reus*, showing that "*the defendant conducted or attempted to conduct* a financial transaction having at least a *de minimis* effect on interstate commerce or involving the use of a financial institution which is engaged in, or the activities of which have at least a *de minimis* effect on, interstate commerce." *Kivanc*, 714 F.3d at 796 (emphasis added). But while the superseding lists the transactions that took place, it provides no notice of Mr. Osermwenkhae's *actus reus* with respect to each transaction. "Where guilt depends so crucially upon such a specific identification of fact . . . an indictment must do more than simply repeat the language of the criminal statute." *Russell*, 369 U.S. at 764,

The government also argues that the discovery it has provided remedies the need for a bill of particulars. ECF 166 at 47-48. The government describes at length the mass of discovery it produced to the defense over over the 11 months that Mr. Osemwenkhae has been charged, consisting of multiple terabytes of data. Mr. Osemwenkhae disagrees, and submits that the way this data was organized and produced did not make it possible for Mr. Osemwenkhae to meaningfully discern the essential information to which he is entitled under due process–it did the opposite. This is why Mr. Osemwenkhae persistently sought a reverse proffer, or other

information that would allow him to discern the key facts of the alleged conspiracy and his alleged role within it.  "Perhaps the most frequent case in which particulars are warranted is where discovery is overwhelmingly extensive and the government fails to designate which documents it intends to introduce and which documents are merely relevant to the defense." *United States v. Mahaffy*, 446 F. Supp. 2d 115, 119 (E.D.N.Y. 2006) (emphasis omitted). "[A] large volume of discovery warrants a bill of particulars if it obfuscates the allegedly unlawful conduct and unfairly inhibits the defendant's preparation for trial."  *Id*. at 120.  Courts therefore typically order a bill of particulars when the government provides the defendant with mountains of evidence and insufficient guidance as to their significance.  *See, e.g.*, *United States v. Malganik*, 160 F. Supp. 3d 909, 918 (W.D. Va. 2015) (ordering bill of particulars where defendant would be required to sift through thousands of files and to identify a few individuals among thousands); *United States v. Perry*, 30 F. Supp. 3d 514, 523 (E.D. Va. 2014) ("A defendant is not fairly apprised of the necessary information merely because the government provided 'mountains of documents to defense counsel who were left unguided as to which documents would be proven falsified' at trial." (quoting *United States v. Bortnovsky*, 820 F.2d 572, 575 (2d Cir. 1987))); *United States v. Ramirez*, 609 F.3d 495, 503 (2d Cir. 2010) (stating that the "district court made clear that it ordered a bill of particulars because so much discovery was produced to the defendants, not too little"); *United States v. Aispuro*, No. CR 08-2936 JB, 2010 WL 1404196, *6 (D.N.M. Mar. 16, 2010) ("The Court also finds persuasive the Defendants' argument that, in a complex case with voluminous unorganized discovery, a bill of particulars is particularly necessary to avoid surprise at trial."); *Vasquez-Ruiz*, 136 F. Supp. 2d at 943 (citing *United States v. Davidoff*, 845 F.2d 1151, 1155 (2d Cir. 1988) ("The defense should not be left to

7

its own devices and a sifting of the voluminous materials that have been provided in order to divine the particulars of these critical allegations, which have not yet been disclosed.").

By contrast, the December 11, 2024 production–disclosed more than 10 months after Mr. Osemwenkhae was charged–is organized based on the alleged victims, and in contrast to prior discovery actually is useful in discerning the type of information that Mr. Osemwenkhae needs to prepare a defense. However, this does not eliminate the need for a bill of particulars. Indeed, even in cases where the government has provided a reverse proffer, something the government has not done here for Mr. Osemwenkhae, courts have nevertheless required a bill of particulars where appropriate under the circumstances of the case. *See Perry*, 30 F. Supp. 3d at 522, 523-25 (ordering the government to provide a bill of particulars although it "has proffered evidence that it intends to introduce at trial to demonstrate that Mr. Perry was the 'mastermind' behind the Medicaid fraud charged in the superseding indictment . . . .").

Finally, the government argues that the Court should not grant a bill of particulars because "it will greatly prejudice the government by restricting its ability to present proof at trial." ECF 166 at 48. But as courts have recognized, an important function of the notice requirement is to prevent the government from "shiftin[ing] its theory of criminality." *Russell*, 369 U.S. at 768. Moreover, that a bill of particulars "may require some disclosure of the government's evidence is not a bar to the relief where the particulars demanded are, in fact, necessary to the preparation of the defense." *United States v. Bonanno*, 177 F. Supp. 106, 119 (S.D.N.Y. 1959).

In sum, with a lack of meaningful notice of Mr. Osemwenkhae's specific alleged role in the conspiracy, and without specifics as to Mr. Osemwenkhae's *actus reus* as to each substantive

conspiracy count, against the backdrop of multiple terabytes of data provided in discovery from which the government, the government should be ordered to produce a bill of particulars.

## II.  THE MOTION TO SUPPRESS SHOULD BE GRANTED.

The government argues that the motion to suppress the search of the residence at 510 Stanwich should be denied.  For the reasons discussed below, the government's arguments should be rejected.

First, the government argues that Mr. Osemwenkhae does not have standing to assert a Fourth Amendment violation in connection with this search because "disavows ownership and occupancy in the Stanwich Residence multiple times throughout his Motion." ECF 166 at 51. The government also claims that Mr. Osemwenkhae "contends that he only visited the residence four discrete times between 2023 and 2024, making him an infrequent and transactional visitor." In fact, Mr. Osemwenkhae has taken neither of those positions.  As the Court is well aware, his actual status with respect to the residence at issue is completely beside the point when determining the validity of a warrant.  Instead, what matters is what is alleged within the four corners of the affidavit.  *United States v. Lyles*, 910 F.3d 787, 791 (4th Cir. 2018) (noting that courts "may not go beyond the information actually presented to the magistrate during the warrant application process.").

Accordingly, Mr. Osemwekhae asserted that "[t]he mere fact that law enforcement claimed to observe Mr. Osemwenkhae at a residence of which his mother was the legal owner a total of four times *is not sufficient to establish probable cause* that Mr. Osemwenkhae actually resided at that location." ECF 149 at 6 (emphasis added).  Because a search warrant requires "probable cause to believe that the legitimate object of a search is located in a particular place," ECF 149 at 4 (citing cases), there must be first be probable cause that the suspect has sufficient

9

ties to that residence. Here, the affidavit sought to establish this requirement by attempting to show that Mr. Osemwenkhae inhabited the residence, when all it was actually able to show is that Mr. Osemwenkhae was at the residence less than five times over the course of some two years. For these reasons, the government's lengthy argument about standing misses the mark entirely.

The government also argues that the evidence was in fact sufficient to establish that Mr. Osemwenklhae lived at the residence. In doing so, the government does little more than repeat what is alleged in the affidavit. ECF 166 at 54-57. The government claims that Mr. Osemwenkhae's presence at the residence a total of four times during 2022 and 2023, and that his presence there two days before the warrant was authorized, is sufficient to establish probable cause to search the residence. ECF 166 at 54 (citing *United States v. McNeal*, 818 F.3d 141, 151 (4th Cir. 2016)). But *McNeil* is distinguishable. There, the defendant was seen leaving the residence at which the search took place immediately before the robberies at issue, and the car used in the robberies was registered to his mother at that address. *Id*. Under these facts, there was probable cause to search the residence. This is intuitive, because his presence there immediately before the robberies would suggest that he would store the instrumentalities of the offense there, and that he may also keep the fruits of the robberies at that location. But here, the affidavit alleged no similar connection between Mr. Osemwenkhae's presence at the residence and any specific conduct with which he was charged. These critical differences compel a different result here.

The government also points to the cell site information, referring to the allegations that Mr. Osemwenkhae's phone was in the "vicinity" of the residence. ECF 166 at 54.[3] But what

---

[3] Elsewhere, and contrary to what is actually alleged in the affidavit, the government claims that law enforcement "obtained the location information for Osemwenkhae's cell phone, placing him at or near the residence for an extended period." ECF 166 at 55-56. Even if the

10

does "vicinity" mean? Is it a one-mile radius, a five-mile radius, a 10-mile radius? The affidavit does not specify. And this becomes a particularly meaningless allegation alongside the fact that Mr. Osemwenkhae was the legal owner of another residence, also located in Bowie. See ECF 149-1 (warrant) at 24. On the face of the affidavit, this cell site data could simply mean he was at that other residence. Here again, the content of the affidavit is the determining factor for probable cause, and the cell site data was minimally probative, if at all.

Seeking to distinguish *Brinkley* on the ground that it dealt with arrest warrants rather than search warrants, the government urges this Court to disregard evidence that is nevertheless material to the probable cause determination. ECF 166 at 56-57. Regardless of the fact that *Brinkley* addressed an arrest warrant, its analysis regarding evidence that may tend to support or defeat an inference regarding a suspect's connection to a residence is nevertheless valid. Applied here, it shows that the evidence that Mr. Osemwenlhae was not the legal owner of the residence, in combination with the fact that he owned a different residence was evidence that called into question the scant evidence that was put forward to show he resided at the Stanwich address. ECF 149 at 7-8. Moreover, the fact that he listed the other home as his residence on legal documents further undercut the scant evidence.

For these reasons, the government failed to make a sufficient showing of Mr. Osemwenkhae's connection to the residence, let alone the further showing that the residence was connected to the offense under investigation would be found at the residence. *United States v. Lalor*, 996 F.2d 1578,1583 (4th Cir. 1993) ("residential searches have been upheld where some information links *criminal activity* to the defendant's residence.") (emphasis added). While

---

government did so, this differs from what is alleged in the affidavit, which uses the vague term "vicinity" and offers no other specifics.

11

courts may make such inferences where there is a sufficient connection between the defendant and the place to be searched, that connection has not been established here.

Finally, Mr. Osemwenkhae's motion set forth the reasons why the good faith defebse to a lack of probable case does not apply here. The government's argument on good faith collapses back into its argument that there was sufficient probable cause. *See* ECF 166 at 59-61. Mr. Osemwenkhae submits–as he did in his motion–that probable cause is so lacking here that it would have been unreasonable for an officer, let alone a magistrate to believe there was probable cause for the search of the residence based on the allegations in the affidavit.

For all of these reasons, the evidence seized from the Stanwich residence must be suppressed.

### III. THE COURT SHOULD SET A DEADLINE TO DISCLOSE 404(b) EVIDENCE WELL IN ADVANCE OF TRIAL.

In its response, the government argues that the Court should deny Mr. Osemwenkhae's motion because it has represented to him in letters that it will make its disclosure "[a]t a reasonable time prior to trial." ECF 166 at 61. Needless to say, Mr. Osemwenkhae's view of what is reasonable is likely to be significantly different than that of the government.

The government also states that "at the present time, the government anticipates that the vast majority, if not all, evidence at trial will all be intrinsic to the charges then pending." *Id*. The government's uncertainty regarding what is intrinsic and extrinsic to the conspiracy it charged over a year ago is itself a substantial reason to grant early disclosure of 404(b) evidence, along with the requirement of a proffer of admissibility for such evidence. Rule 404(b)'s notice requirement serves an important purpose. "The notice requirement in Rule 404(b) was designed to prevent defense counsel from being prejudiced in preparing its defense against prior acts evidence." *United States v. Byers*, 2009 WL 301951, at *4 (D. Md. Feb. 6, 2009), *aff'd,* 649 F.3d

197 (4th Cir. 2011). In addition to reducing surprise, the notice requirement exists to "promote early resolution on the issue of admissibility." 1991 Advisory committee's notes on Fed.R.Evid. 404(b). The issue of lack of notice from the indictment and superseding indictment in this case also weighs heavily in favor of an early Fed. R. Evid. 404(b) disclosure.

Admissibility determinations are particularly important with respect to potential Rule 404(b) evidence, given the highly prejudicial nature of evidence that implicates character and propensity. *See, e.g.*, *United States v. Sampson*, 980 F.2d 883, 886 (3d Cir. 1992) (discussing the highly prejudicial nature of evidence implicating character, and noting that "[a]lthough the government will hardly admit it, the reasons proffered to admit prior bad act evidence may often be, because the motive, we suspect, is often mixed between an urge to show some other consequential fact as well as to impugn the defendant's character."). Courts must also consider the admissibility of uncharged acts under Rule 403. *See, e.g., King v. Ahrens*, 16 F.3d 265, 269 (8th Cir. 1994).

For all of the foregoing reasons, the Court should require the government to disclose its proffered 404(b) evidence, and set forth the permissible basis to admit such evidence, well in advance of trial.

IV.   **THE GOVERNMENT SHOULD BE REQUIRED TO DISCLOSE ALL ALLEGED FED. R. EVID. 901(D)(2) STATEMENTS IN ADVANCE OF TRIAL.**

Co-conspirator statements are admissible under Fed. R. Evid. 801(d)(2)(E) only if there is "substantial evidence of the conspiracy other than the statement itself." *United States v. Dockins*, 659 F.2d 15, 16 (4th Cir. 1981). In other words, for the government to introduce alleged co-conspirator statements against Mr. Osemwenkhae in this case, it must produce sufficient independent evidence that: (1) any co-conspirator statement sought to be admitted were made

during and in furtherance of a conspiracy, and (2) Mr. Osemwenkhae was a member of that conspiracy.

The government argues that the Fourth Circuit does not require pretrial hearings to determine the admissibility of coconspirator statements, ECF 166 at 62, but does not challenge the basic premise that district courts retain the discretionary power to hold such hearings if the court wishes to do so. While it is true that the Fourth Circuit does not *require* district courts to hold pretrial hearings on the admissibility of co-conspirator statements, *see United States v. Hines*, 717 F.2d 1481, 1488 (4th Cir. 1983), this Court undoubtedly retains the discretion to order such a hearing in an appropriate case, pursuant to its general trial management powers and the ability to decide the order of proof. Some district courts in this Circuit, for example, have opted to require the government to submit a proffer of the evidence on the admissibility of co-conspirator statements prior to trial in order to resolve admissibility questions. *See United States v. Nelson*, 530 F. Supp. 2d 719, 728 (D. Md. 2008).

Moreover, the government does not advance any substantive reason for why such a hearing is inappropriate in this case. The claims that Mr. Osemwenkhae's motion is "highly unusual" and even "improper," ECF 166 at 62-63, are not an actual response to the substantial reasons for early disclosure of 801(d)(2) statements under the facts of this case.

The government claims that Mr. Osemwenkhae is not entitled to the relief he seeks because of the discovery it has provided to him. ECF 166 at 64. But as already noted, the discovery is a reason supporting the relief sought here–Mr. Osemwenkhae cannot be expected to wade through multiple terabytes of data on multiple devices seized from multiple defendants on a mission to discern what the government might argue to be admissible statements.

Lastly, the government attempts to fault defense counsel for asserting his speedy trial rights but now also taking the position that discovery is extensive and complex. Contrary to the government's position, Mr. Osemwenkhae does not face an either-or choice between his right to a speedy trial and his due process right to fair notice and a fair trial. In fact, his positions are consistent: just as he sought specificity from the government during the period when the government was unresponsive, he now asks the Court to enter an order that would require specificity regarding voluminous evidence buried in terabytes of data.

## CONCLUSION

For all of the foregoing reasons, the Court should grant each of Mr. Osemwenkhae's pretrial motions.

Respectfully Submitted,

By:/s/ Eugene Gorokhov
Eugene Gorokhov, Esq. (D. MD Bar. 07233)
BURNHAM & GOROKHOV, PLLC
1634 I Street NW, Suite 575
Washington, DC 20006
(202) 386-6920 (phone)
(202) 765-2173 (fax)
eugene@burnhamgorokhov.com
